## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL
ÁSBESTOS WORKERS MEDICAL FUND,
and
TRUSTEES OF THE NATIONAL
ASBESTOS WORKERS PENSION FUND,

      Plaintiffs,

      v.

STOTTS MECHANICAL INSULATION,
INC.,

      Defendant.

Civil Action No. TDC-15-2789

### MEMORANDUM OPINION

This case is before the Court on a Motion for Default Judgment. Having reviewed the Complaint, the Motion, and the supporting documents, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is GRANTED.

### BACKGROUND

Plaintiffs are the trustees ("Trustees") of the National Asbestos Workers Medical Fund ("Medical Fund") and the National Asbestos Workers Pension Fund ("Pension Fund") (collectively, the "Asbestos Funds"), as that term is defined in the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1002(3) (2012). Defendant Stotts Mechanical Insulation, Inc. ("Stotts") is an employer engaged in an industry affecting commerce, as defined in ERISA. *See* 29 U.S.C. §§ 1002(5), (12). Stotts is required to make regular contributions to the Asbestos Funds pursuant to (1) two Collective Bargaining Agreements ("CBAs") between

the Insulation Contractors Association of Local # 50, the International Association of Heat and

Frost Insulators and Allied Workers Local Union # 50, and various employers, including Stotts;

and (2) two trust agreements ("Trust Agreements"), one establishing the Medical Fund and the

other establishing the Pension Fund.  By the terms of these agreements, an employer must submit

monthly reports detailing the hours worked by all covered employees and make the

corresponding contributions to the Asbestos Funds by the 15th day of the following month.  If an

employer fails to submit reports of actual hours worked, contributions are determined based on

the greater of (1) the average of the monthly payments or reported figures actually submitted for

the last three months for which payments or reports were submitted, or (2) the average of the

monthly payments or reported figures submitted for the last 12 months for which payments or

reports were submitted.   If an employer makes its contributions late or fails to make

contributions entirely, it is subject to interest on the unpaid balance and to liquidated damages.

These enhanced damages begin to accrue only after a 10-day grace period.  The Medical Fund

trust agreement provides that interest may be assessed at either 8 percent from the due date to the

date of payment, 1.5 percent per month, or at the rate provided for in ERISA.  The Pension Fund

trust agreement provides that interest may be assessed at 8 percent from the due date to the date

of payment or at the rate provided for in ERISA.  The Trust Agreements both provide that

liquidated damages will be assessed at the rate of 20 percent of the outstanding balance or the

amount of 20 dollars, whichever is greater.   The Trust Agreements also provide that the

employer will be liable for all reasonable costs and attorney's fees that the Trustees incur in

attempting to recover delinquent contributions.

Stotts failed to make its full contributions to the Asbestos Funds for the amounts due in

March 2014, the period from July 2014 to September 2014, March 2015, and May 2015.  Those

incomplete or missed payments left Stotts $12,559.39 in arrears on its required contributions. Stotts also failed to submit reports or pay contributions for the months of April 2015, July 2015, and August 2015. Based on the average of the reports Stotts submitted for March, May, and June 2015, Stotts owes the Asbestos Funds $30,951.71 in unpaid contributions for April, July, and August 2015. In addition to these missed payments, Stotts was late on payments it made, whether for the full or a partial amount due, for the following months: September 2013, October 2013, January to May 2014, and July 2014 to February 2015.

On September 16, 2015, the Trustees filed a Complaint seeking the monies owed under the terms of the CBAs and the Trust Agreements, specifically (1) $43,511.10 in unpaid contributions; (2) $6,896.40 in interest on the missed and delinquent payments to the Medical Fund, calculated at a rate of 1.5 percent per month; (3) $3,484.14 in interest on the missed and delinquent payments to the Pension Fund, calculated at a rate of 8 percent from the due date to the date of payment; (4) $15,814.96 in liquidated damages on the missed and delinquent payments to the Pension Fund; and (5) reasonable attorney's fees and costs incurred in efforts to recover the delinquent contributions. The Complaint also seeks an award "[f]or all contributions, liquidated damages and interest which become due subsequent to the filing of this action through the date of Judgment." Compl. at 5.

On October 16, 2015, Stotts was served with the Complaint and failed timely to file a responsive pleading. On November 24, 2015, the Trustees filed a Motion for Clerk's Entry of Default and a Motion for Default Judgment. In that Motion, the Trustees revised the damages sought to include unpaid contributions and associated enhanced damages for September and October 2015. The Clerk entered default against Stotts on November 30, 2015. To date, Stotts has not responded to that default or to the Trustees' Motion for Default Judgment.

## DISCUSSION

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002). The Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421-22 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court must determine whether the allegations support the

relief sought. *See id.* To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). Rule 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

## II.    Liability

ERISA requires that any employer obligated to make contributions to a qualifying benefit fund must "make such contributions in accordance with the terms and conditions" of the parties' agreements. 29 U.S.C. § 1145. Because Stotts has failed to appear or otherwise defend, the Court accepts as true the well-pleaded factual allegations in the Complaint. *Ryan*, 253 F.3d at 780. Those allegations establish that Stotts was obligated by the terms of the CBAs and the Trust Agreements to provide timely reports of hours worked by covered employees and to make corresponding timely contributions to the Asbestos Funds. The allegations further establish that Stotts failed to make payments in full for the months of March 2014, July 2014 to September 2014, March 2015, and May 2015 and that Stotts failed to submit reports or pay contributions for the months of April 2015, July 2015, and August 2015. Lastly, the allegations establish that Stotts made late payments for the following months: September 2013, October 2013, January to May 2014, and July 2014 to February 2015. The Complaint therefore establishes that Stotts is

5

liable to the Trustees for those unpaid contributions and for additional damages arising from the unpaid and late contributions, as defined in the governing agreements.

## III.   Damages

By the terms of the agreements between the parties, Stotts is liable to the Trustees for its (1) unpaid contributions, (2) liquidated damages, (3) interest on the delinquent Medical Fund contributions at the rate of 1.5 percent per month and interest on the delinquent Pension Fund contributions at a rate of 8 percent from the due date to the date of payment, and (4) attorney's fees and costs incurred in attempting to recover the unpaid contributions.  These provisions track ERISA itself, which provides that employers who fail to make timely contributions are liable for:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> > (i) interest on the unpaid contributions; or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g).  The Trustees are therefore entitled under ERISA and the terms of the parties' agreements to each of the categories of damages that the Trustees assert in their Complaint.

As for specific amounts, in the Motion for Default Judgment, the Trustees seek (1) $64,621.81 in unpaid contributions, (2) $18,560.37 in liquidated damages, (3) $9,468.65 in interest, and (4) $1,587.50 in attorney's fees and costs.  The Trustees explain that they have increased the damages sought from those alleged in the Complaint because Stotts has failed to make its required contributions for September and October 2015.  Because the Trustees did not

6

allege in their Complaint that Stotts missed its required September and October 2015 payments, and because those alleged violations had not even occurred as of the date of the Complaint, the Trustees cannot recover damages for those alleged violations in this suit. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *In re Genesys,* 204 F.3d at 132 ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages ... because the defendant could not reasonably have expected that his damages would exceed that amount."). They can recover only what they pled in the Complaint.

In the Complaint, the Trustees sought (1) $43,511.10 in unpaid contributions, (2) $15,814.96 in liquidated damages on the missed and delinquent payments to the Pension Fund, (3) $6,896.40 in interest on the missed and delinquent payments to the Medical Fund, and (4) $3,484.14 in interest on the missed and delinquent payments to the Pension Fund. In support of these calculations, the Trustees submit a chart detailing all of the unpaid contributions and the declaration of Simone L. Rockstroh, the President of Carday Associates, which is the Administrative Agent for the Asbestos Funds. In that declaration, Rockstroh attests to the facts alleged in the Complaint and to the accuracy of the damages calculations. The Court therefore awards the Trustees the requested $69,706.60 in unpaid contributions and damages, as divided above.

In the Complaint, the Trustees also sought attorney's fees and costs of $1,587.50, consisting of $992.50 in attorney's fees and $595.00 in costs. In support of this request, Plaintiffs' attorney, Charles W. Gilligan, provides receipts for the $400.00 filing fee and $195.00 spent for a private process server. Gilligan also attests that he spent 0.5 hours on this case, billed at a rate of $230.00 per hour, and that a paralegal spent 6.75 hours on this case, billed at a rate of

$130.00 per hour. Gilligan further attests that he has been a member of the bar since 1986. For an attorney with 30 years of experience, this Court's Guidelines Regarding Hourly Rates advise an hourly billing range of $300-475. *See* D. Md. Local R. App. B ¶ 3. For a paralegal, this Court's Guidelines advise an hourly billing range of $95-150. *Id.* The Court therefore finds that the attorney's fees and costs requested in this case, which are billed either at a rate below or within this Court's Guidelines, are reasonable. The Court therefore awards the Trustees $1,587.50 in attorneys' fees and costs, as delineated above.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is GRANTED. Plaintiffs are awarded a total of $71,294.10, as specified in the separate Order accompanying this Memorandum Opinion.

Date:   June 24, 2016

THEODORE D. CHUANG
United States District Judge

8